```
             UNITED STATES DISTRICT COURT
               DISTRICT OF MINNESOTA
              Civil No. 09-2231(DSD/JJG)
```

Andrea Andrews and
Chaleesha Wall,

       Plaintiffs,

v.                                                  **ORDER**

Fantasy House, Inc.,
doing business as
Fantasy Gifts,

       Defendant.

    Megan I. Brennan, Esq., James H. Kaster, Esq., Sarah W. Steenhoek, Esq. and Nichols Kaster, Suite 4600, 80 South Eighth Street, Minneapolis, MN 55402, counsel for plaintiffs.

    Laurel J. Pugh, Esq., Laura J. McKnight, Esq. and Bassford Remele, 33 South Sixth Street, Suite 3800, Minneapolis, MN 55402, counsel for defendant.

    This matter is before the court upon the motion for summary judgment by defendant Fantasy House, Inc. (Fantasy Gifts). Based on a review of the file, record and proceedings herein, the court grants in part the motion.

**BACKGROUND**

    This employment action arises out of the termination of plaintiffs Chaleesha Wall and Andrea Andrews by Fantasy Gifts on November 10 and 11, 2008, respectively. Wall, who is white, began work in as a sales associate at a Fantasy Gifts store in Fridley,

Minnesota in March 2007. Thereafter, Bruce Baker became the manager of the Fridley store. He hired Andrews, who is black, as a sales associate in August 2007. Wall and Andrews were the only daytime employees of the store. They would sometimes exchange shifts to help each other.[1] Baker approved this practice. See Wall Dep. 27–28; Andrews Dep. 23–25; Baker Dep. 120, 124–27.

The Fantasy Gifts Employee Resource Book (Resource Book) states, "Fantasy Gifts' established employee relation's [sic] policy is to ... [a]ssure employees, after talking with their manager, an opportunity to discuss any problem with the owners of Fantasy Gifts." Brennan Decl. Ex. 19, at 639. "An employee who has a problem or complaint is to "[f]irst, talk to [his or her] manager or an immediate supervisor" and if the manager cannot resolve the matter, "speak to an owner." The Resource Book encourages employees "to resolve problems right away" because "it is best to get things off your chest before they get out of hand." Id. at 661.

The parties dispute the events from November 5 to 11, 2008, and the court recites the plaintiffs' version for purposes of this motion. On November 5, 2008, the day after the election of President Barack Obama, Baker went to the Fridley store. He asked Wall "if she thought America was ready for a black president."

---

[1] On one occasion in September or October 2008, Andrews arrived late to cover Wall's shift. See Baker Dep. 56. Baker "brushed it off as not a big deal." Id. at 59.

Wall Dep. 43; Baker Dep. 222.  Baker told her that he did not "know if President Obama can do what the country needs" because "of the type of person he is."  Wall Dep. 43-44.  Wall asked what he meant, and Baker said, "Well, he's black.  I don't think American's [sic] ready for a — a black president."  <u>Id.</u> at 44.  Baker also said, "When I think — when I think of these people, I think of the niggers on the side of the road, and he's really no different, so I don't think he could do what our country needs."[2]  <u>Id.</u>

When Andrews arrived, Baker said that they were talking about the election and that he thought it was "an incredible thing."  Baker Dep. 226-27.  Wall said, "You did a 180 there, Bruce."  <u>Id.</u> 226, 228.  Baker then said "Well, you have to watch what you say around certain people."  Wall Dep. 47.  Shortly after, Wall told Andrews about Baker's earlier comments.  Both plaintiffs then confronted Baker, and he denied being a racist.

Baker took Andrews outside the store to talk.  At some point, Baker told Andrews that, as a teenager, he had been a victim of statutory rape and had been jumped by "a group of black teenagers."  Baker Dep. 232-33, 235-36.  Baker also told her that "[t]he reason that I am the way that I am today towards black people, that I treat black people this way is because I was raped by a black man."

---

[2] As an example of the disputed facts, according to Baker, he "was elated that Barack Obama had won" and told Wall that he thought that when some people think of Obama, they might think of "the brothas" on the street or the "saggers" walking around downtown.  Baker Dep. 222-25.


Andrews Dep. 36. Thereafter, Baker left the store. He did not discuss the incident with his superiors.

According to Baker, on November 7 somebody from the main office told him that he needed to put an end to shift exchanges between Wall and Andrews. Baker Dep. 238-41. He went to the Fridley store, took plaintiffs into a back room and told them that "he's not going to take this," that he was going to "become stricter" on them and that the November 5 conversation "has a lot to do with it." Andrews Dep. 38-40; Wall Dep. 51-53; cf. Baker Dep. 243. All three raised their voices during the conversation but did not yell or use profanity. Baker Dep. 244-45. The plaintiffs walked back into the store when they apparently "thought [Baker] was done talking." Baker Dep. 242.

Thereafter, Baker told one of the owners of Fantasy Gifts, Colleen Bertino, that the plaintiffs walked away from him after the November 7 conversation. Id. at 247. Bertino said "get rid of them." Id. Bertino Dep. 216. According to Bertino, she decided to terminate plaintiffs in October 2008 because the "numbers were going down" at the Fridley location and she was "getting fed up with" the shift switching. See Bertino Dep. 157-58. She did not terminate plaintiffs, however, because it "was getting close to the holidays" and she did not want to train new employees. Bertino Dep. 158-59.

On November 9, Wall asked Baker if she were in trouble. Baker said that she was. He told Wall that Fantasy Gifts was going to terminate Andrews because they were afraid she would "pull the race card" against the company. Wall Dep. 57; see Baker Dep. 265. When she asked if she were going to be fired too, Baker said "I'm not for sure yet, but I think so, because if we fire Andrea and she's black and she can use the race card against her [sic] so we have to fire you too, because you're white, and if we don't ... it's going to make the company look bad." Wall Dep. 58; see Baker Dep. 263 ("I didn't think I could get rid of one and not the other since they were both in the same boat."). Baker then said that Andrews was being emotional, that her hormones were getting to her due to her pregnancy, and that even if she weren't terminated, she would be leaving soon because of her pregnancy. Id.

On November 10, Baker went to the store with another manager and terminated Wall "for being insubordinate and for the shift changes."[3] Baker Dep. 272, 278. On November 11, Baker went to the store with two other managers and terminated Andrews for "the insubordinate nature and the switching of shifts, the lowered sales

---

[3] That same day, Wall called Bertino. When she told Bertino that Baker had made racist comments and that it was unfair that she and Andrews were being fired, Bertino said "I don't care what the situation is. Minnesota is an at-will state and I can fire both of you guys at any time for any reason, and no matter what you guys say or do, you guys will never have employment at Fantasy Gifts ever again." Wall Dep. 66-67.

and the customer complaints, and the rude behavior and the abusive nature." Baker Dep. 277.

Andrews filed this action against Fantasy Gifts and, on October 20, 2009, filed an amended complaint adding Wall as a plaintiff. Plaintiffs claim race discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 1981 and the Minnesota Human Rights Act (MHRA). See Am. Compl. ¶¶ 36-52. Andrews claims sex discrimination in violation of Title VII and the MHRA. Wall claims retaliation in violation of Title VII and the MHRA. Fantasy Gifts moved for summary judgment. The court now addresses the motion.

## DISCUSSION

### I.  Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c);[4] see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could

---

[4] The court cites the Federal Rules of Civil Procedure in effect at the time of the motions and hearing. Changes effective December 1, 2010, do not affect the outcome of this case.

cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of his claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

A plaintiff in an employment action may survive a motion for summary judgment through direct evidence or through an inference of unlawful discrimination under the burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973)). Direct evidence shows "a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employer's decision." Humphries v. Pulaski Cnty. Special Sch. Dist., 580 F.3d 688, 692 (8th Cir. 2009) (citation and internal quotation marks omitted). Under McDonnell Douglas, a plaintiff must first establish a prima facie case of discrimination. See id. The burden then shifts to the

employer to articulate a legitimate, nondiscriminatory reason for its actions. See id. at 692-93. If the employer puts forth such a reason, the plaintiff then must produce evidence demonstrating that the employer's reason is pretext for unlawful discrimination. See id. at 693.

**II. Race Discrimination**

An employer may not discharge or otherwise discriminate against an employee because of her race. See 42 U.S.C. § 2000e-2(m) (Title VII); Id. § 1981 (§ 1981) Minn. Stat. § 363A.08 subdiv 2. (MHRA).[5] Thus, in order to prevail, plaintiffs must show that race played a part in Fantasy Gifts' decision to terminate them.

Genuine disputes of material facts preclude summary judgment on plaintiffs' race discrimination claims. A jury could credit plaintiffs' version of the facts and discredit Fantasy Gifts' version. As a result, a jury could believe that Baker told Wall that Fantasy Gifts was going to terminate Andrews because it was afraid she would "pull the race card" and that it needed to fire

---

[5] The court applies the same analysis to claims under Title VII, § 1981 and the MHRA when, as here, the claims depend on identical facts and theories. See Torgerson v. City of Rochester, 605 F.3d 584, 594 (8th Cir. 2010) (Title VII and MHRA); Takele v. Mayo Clinic, 576 F.3d 834, 838 (8th Cir. 2009) (Title VII and § 1981.

Wall because she is white in order to cover up its racial grounds for terminating Andrews. Such statements are direct evidence of race discrimination.[6]

Fantasy House argues that the claims fail because Bertino was the decisionmaker, she made the decision before the November incidents and she did not know the race of each plaintiff. Bertino's assertion that she decided to terminate plaintiffs in October 2008 but neither took action nor told anyone is of little value: a reasonable jury could conclude that she did not decide to terminate plaintiffs in October 2008.[7] Second, plaintiffs introduced evidence that Bertino met and worked with them, which belies her claim that she did not know their races. See Andrews Dep. 16-17; Bertino Dep. 179, 182. Moreover, an employer is not shielded from liability when a decisionmaker acts on information provided by a biased manager. See Qamhiyah v. Iowa State Univ. of Sci. & Tech., 566 F.3d 733, 742-43 (8th Cir. 2009). Bertino's only

---

[6] Although the hiring of Andrews by Baker allows an inference that he did not then later discriminate against her, Andrews presents evidence, which, if credited by the jury, overcomes that inference. See Herr v. Airborne Freight Corp., 130 F.3d 359, 362-63 (8th Cir. 1997).

[7] Moreover, plaintiffs produced evidence that undermines Bertino's assertion: she did not fire the employee of another store that had lower sales during the same period. Baker Dep. 107. Fantasy Gifts also states that it received complaints about plaintiffs, but did not tell Baker about those complaints. Id. at 113. Fantasy Gifts did not tell plaintiffs about its dissatisfaction with the shift switching, complaints or a decision to terminate them until November.

information about the alleged insubordination came from Baker. No evidence suggests that she performed any investigation of the alleged insubordination that led to termination. As a result, a jury could find that Baker intended to cause adverse action motivated by race, and that his acts were a proximate cause of plaintiffs' terminations. See Staub v. Proctor Hosp., No. 09-400, slip op. at 10 (U.S. Mar. 1, 2011). Therefore, Fantasy Gifts' argument fails, and summary judgment is not warranted.

**III. Retaliation**

To establish a prima facie case of retaliation, Wall must show (1) she engaged in protected conduct, (2) she suffered an employment action that would dissuade a reasonable employee from making a charge of discrimination, and (3) that there is a causal connection between the two. See Higgins v. Gonzales, 481 F.3d 578, 589 (8th Cir. 2007) (Title VII); cf. Bahr v. Capella Univ., 765 N.W.2d 428, 433 (Minn. Ct. App. 2009) (MHRA). To establish a causal connection, plaintiffs must present evidence that gives rise to an inference of retaliatory motive. See Kipp v. Mo. Hwy. & Trans. Comm'n, 280 F.3d 893, 897 (8th Cir. 2002).

A person engages in protected conduct when she opposes acts that she has a "good-faith, reasonable belief" violate Title VII or the MHRA. Bahr, 788 N.W.2d at 83–84 (Minn. 2010); accord Barker v. Mo. Dep't of Corr., 513 F.3d 831, 834 (8th Cir. 2008). Wall argues that she engaged in protected conduct on November 5 when she told

Baker that his comments about the President-elect were racist and on November 9 when she called the decision to terminate Andrews to prevent her use of "the race card" unfair. The court agrees. Wall could reasonably have believed that Baker's comments violated Title VII and the MHRA. Baker's decision to become more strict with plaintiffs on November 7 as a result of the November 5 incident, and the termination of Wall are both adverse employment actions. The close proximity between the November 5 incident, November 7 decision to become more strict with plaintiffs, Wall's November 9 statement that termination was unfair and termination on November 10, strongly support inference of retaliatory intent.

Fantasy Gifts argues that the intervening "confrontation" of Baker on November 7, and the decision to talk to Baker rather than the owners is intervening conduct that erodes any inference that might be drawn from the close proximity. The court disagrees. There is no evidence of anything other than strong emotions: Wall did not yell, threaten or even refuse to obey Baker's directive. Moreover, Fantasy Gifts expressly directs its employees to discuss problems with their managers first, and to do so quickly. Wall acted fully in accordance with the Resource Book. As a result, Wall has established a prima facie showing.

Fantasy Gifts argues that it offers legitimate, non-discriminatory reasons for terminating Wall: her insubordination on November 7. The court has already determined that a material fact

remains, however, about whether Fantasy Gifts believed that Wall was insubordinate on November 7. Baker testifies that she walked away when she thought the conversation was over, and there is no evidence that Wall refused to comply with the directive not to swap shifts. As a result, Fantasy Gifts has not articulated a legitimate reason for termination. Moreover, even if the court accepted the proffered reason, the same evidence raises an inference that "insubordination" was pretext for unlawful discrimination. Therefore, summary judgment is not warranted on Wall's claim of retaliation.

**IV. Sex Discrimination**

Title VII and the MHRA make it an unlawful employment practice to discharge an employee because of sex or pregnancy. See 42 U.S.C. § 2000e(m), (k); id. § 2000e-2(a)(1); Minn. Stat. § 363A.03, subdiv. 42; id. § 363A.08, subdiv 2.[8] A plaintiff may survive summary judgment with either direct evidence or an inference of sex discrimination. "Direct evidence does not include stray remarks in the workplace, statements by non-decisionmakers, or statements by decisionmakers unrelated to the decisional process itself." Twymon v. Wells Fargo & Co., 462 F.3d 925, 933 (8th Cir. 2006) (citation and internal quotation marks omitted).

---

[8] The court applies the same analysis to sex discrimination claims under Title VII and the MHRA. Roberts v. Park Nicollet Health Servs., 528 F.3d 1123, 1128 (8th Cir. 2008).

Andrews was pregnant in November 2008. She argues that Baker's statements that she was "very emotional," that her "hormones are getting to her" and that if she were not fired she would still be leaving the store soon for maternity leave are direct evidence of discriminatory animus. Baker apparently made the statements about Andrews's hormones and emotional state to explain and excuse the offense that Andrews felt. They are stray remarks unrelated to the decision. His statement that Andrews would be taking leave is qualitatively different than his statement that Fantasy Gifts was going to fire plaintiffs because it feared Andrews would "play the race card" and to cover up its racial motivation by also firing Wall. Instead, the statement about maternity leave does not reveal discriminatory animus: it also is a stray remark unrelated to the reasons for the decision to terminate Andrews. Therefore, Andrews fails to present direct evidence of sex discrimination.

A plaintiff may also survive summary judgment through evidence that supports an inference sex discrimination under McDonnell Douglas.[9] To establish a prima facie case of gender discrimination, Andrews must show 1) that she is a member of a protected class, 2) she was meeting her employer's legitimate expectations, 3) she suffered an adverse employment action, and 4)

---

[9] The parties do not expressly address the elements of a prima facie claim under McDonnell Douglas.

13

the adverse action occurred under circumstances giving rise to an inference of discrimination. <u>Elam v. Regions Fin. Corp.</u>, 601 F.3d 873, 879 (8th Cir. 2010).

The court finds that Andrews presented evidence sufficient to meet the first three elements of a prima facie showing. As to the fourth element, Andrews argues that Baker's comments allow an inference of discriminatory intent. The court disagrees. The court has already determined that these comments were stray remarks unrelated to the decision to terminate her employment. These remarks simply do not support an inference that her termination had anything to do with discriminatory animus based on gender. Therefore, summary judgment is warranted on Andrews's gender discrimination claim.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the motion for summary judgment [ECF No. 36] is granted in part:

1. The motion is denied as to plaintiffs' race discrimination claim;

2. The motion is denied as to Wall's retaliation claim; and

3. The motion is granted as to Andrews's sex discrimination claim.

Dated:  March 3, 2011

<div style="text-align:right">
<u>s/David S. Doty</u><br>
David S. Doty, Judge<br>
United States District Court
</div>